IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2016 at Jackson

**JANETTE EBONY ROBINSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2013-A-643     Cheryl A. Blackburn, Judge**

_____

**No. M2016-00058-CCA-R3-PC – Filed January 25, 2017**

_____

The petitioner, Janette Ebony Robinson, appeals the denial of her petition for post-conviction relief, arguing that she received ineffective assistance of counsel and that her guilty pleas were unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Janette Ebony Robinson.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Glenn R. Funk, District Attorney General; and Robert Wilson Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In March 2013, the petitioner was indicted by the Davidson County Grand Jury for five counts of aggravated child abuse and one count of aggravated child neglect based on her 2011 abuse of her three-year-old daughter. On March 7, 2014, she pled guilty to two counts of aggravated child abuse in exchange for an effective sentence of twenty-five years at 100% in the Department of Correction. Pursuant to the terms of her negotiated plea agreement, the remaining counts of the indictment were dismissed.

The prosecutor recited the following factual basis for the pleas at the guilty plea hearing:

Our proof would have shown that in . . . August of 20[11] [the victim] was returned to the care of [the petitioner] on a trial basis and remained in her care through the month[s] of August and September up until October 14th of 2011 when she was admitted to the hospital. Our proof would have shown that in September of 2011, specifically on September 26th of 2011, [the victim] presented to Vanderbilt Hospital with a fracture of her arm. Initially the medical staff accepted [the petitioner's] explanation for this as an accidental injury. However on October 14th of 2011, [the victim] was re[-]presented to Vanderbilt Hospital. At that time she was diagnosed with a lacerated pancreas, a hematoma to her liver, hematomas to her head, severe bruising around her head, a concussion, and various cutaneous injuries.

On October 17th a skeletal survey was done, which revealed an undetected rib fracture that was healing, suggesting it had been caused between the arm fracture and the date of her admission based on the timing of that injury.

Specifically [the petitioner] was asked to describe the circumstances surrounding [the victim's] injuries. She provided a number of conflicting accounts, admitted that she was the caretaker for [the victim]. [The victim] had injuries that represented whip marks from a belt or a cord based on the pattern of injuries. Those occurred during the time period between August 5th of 2011 and September 26th of 2011. She was observed to cause those injuries by [the victim's father] as well as the accounts of one of [the victim's] siblings. That constitutes the basis for the allegations set forth in Count 5 involving causing those injuries with a dangerous instrumentality.

With regard to Count 3 of the indictment alleging the liver hematoma and the lacerated pancreas as well as the head injuries, those occurred on or around October 14th, 2011, based on the information [the petitioner] provided to medical staff about when the child became symptomatic. There were no other individuals who were in a position to have caused these particular injuries on that particular date.

Following her guilty pleas, the petitioner mailed to the trial court a handwritten letter dated March 29, 2014, in which she sought to withdraw her pleas on the basis that her counsel had not fully explained them to her and they were therefore unknowing and

involuntary. See State v. Janette Ebony Robinson, No. M2015-00041-CCA-R3-CD, 2015 WL 8973898, at *1 (Tenn. Crim. App. Dec. 15, 2015), perm. app denied (Tenn. Mar. 23, 2016).

The trial court's office manager forwarded a copy of the letter to the petitioner's trial counsel on April 8, 2014, and on June 2, 2014, trial counsel filed both a motion to withdraw the guilty pleas and a motion to withdraw as counsel. Id. At the hearing on the motion to withdraw the guilty pleas, at which the petitioner was represented by substituted counsel, the petitioner testified "that she had been diagnosed with paranoid schizophrenia and bipolar, PSOD and psychopath" and was currently "taking Seroquel, Trazodone . . . and some more other medicines." Id. at *2. The petitioner stated that, after her arrest, she took her medications only sporadically and that she completely stopped taking them about three weeks prior to her guilty pleas. Id. The petitioner stated that she did not remember what she told the trial judge during her guilty plea hearing and that she did not understand what she was doing in pleading guilty. Id.

On cross-examination, the petitioner acknowledged she said nothing in her letter to the court about not taking her medication or not being of sound mind at the guilty plea hearing. The petitioner claimed that she had informed her trial counsel about being off her medications and that counsel knew she had not been taking them for the three weeks prior to the guilty plea hearing. Id. at *3.

The petitioner's trial counsel denied that the petitioner told him that she had stopped taking her medications at the time of the guilty plea hearing and said that, had he known that, he would never have gone through with the hearing. The petitioner also never contacted him after entry of her guilty pleas to tell him that she had not been taking her medications. Id. at *4.

At the conclusion of the hearing, the trial court denied the petitioner's motion to withdraw her guilty pleas. On direct appeal, this court affirmed the judgment of the trial court, concluding that the record supported the trial court's findings that the pleas were knowingly and voluntarily entered and that no manifest injustice existed that warranted allowing the petitioner to withdraw her pleas:

> The record reflects that at the guilty plea hearing, the trial court questioned the [petitioner] regarding her understanding of the charges against her, her available defenses, the possible sentences, and the effect of the guilty plea on her permanent record. The court also questioned the [petitioner] relative to her medications, how often she took them, and any possible effect they might have on her understanding of the proceedings. The [petitioner] testified she had been taking her medications,

-3-

acknowledged her understanding of her plea, and said she wanted to waive her rights and plead guilty.

The [petitioner's] letter contained complaints about defense counsel's explanation of her rights but did not mention her medications. Counsel testified that the [petitioner] did not contact him after her plea and that the first notice he received of any problem was when he received the forwarded letter from the trial court. The trial court credited counsel's testimony that the [petitioner] did not tell him prior to the guilty plea hearing she had not been taking her medications. The court did not abuse its discretion in finding that the [petitioner] entered a voluntary, intelligent, and knowing plea, and therefore, that no manifest injustice existed.

Id. at *5-6.

On January 21, 2015, the petitioner filed a *pro se* petition for post-conviction relief in which she raised a claim of ineffective assistance of counsel. Following the appointment of post-conviction counsel, she filed an amended petition in which she raised claims of both ineffective assistance of counsel and unknowing and involuntary guilty pleas. Specifically, she alleged that trial counsel was ineffective for, among other things, failing to adequately investigate the case, failing to mount a meaningful defense, failing to communicate with her, failing to have her evaluated for competency by a mental health expert, and failing to thoroughly explain the plea agreement to her. The petitioner further alleged that, due to counsel's ineffective representation, she was unable to fully understand the plea agreement, which rendered her pleas unknowing and involuntary.

At the evidentiary hearing, the petitioner testified that trial counsel visited her "[m]aybe three times" when she was in jail. Counsel brought an investigator with him to the jail, who also spoke with the petitioner. Counsel explained her charges and told her she faced a maximum potential sentence of 125 years if convicted of all charges. Counsel, however, never provided her with any discovery, despite her asking him for it both in writing and orally. The petitioner claimed that when she asked, counsel told her that he did not have enough time to provide her with copies of discovery.

The petitioner testified that she was medicated during the time she spent in jail but that she sometimes stopped taking her medication, which affected her ability to understand counsel. She said that counsel communicated the State's offer to her a week before the trial date and that she was "devastated" by the offer and did not really understand it, but counsel "just threw out numbers" without trying to help her understand.

According to the petitioner, had she gone to trial, she would have "told the truth" to the jury about who had committed the crimes. Specifically, she would have informed them that the victim's father was the perpetrator. The petitioner testified that she informed counsel that the victim's father was the one who committed the crimes and that counsel sent his investigator to talk with the victim's father, with the results being that counsel "told [her] that [the victim's father] seem[ed] like a nice guy" and that counsel did not believe he was capable of the crimes. The petitioner stated that she gave counsel the names and contact information of witnesses, including Bianca German and Shirley Work, who could have corroborated her accusations against the victim's father, but that counsel told her he did not have enough time to interview them. Finally, the petitioner complained that counsel "did not represent [her] right," "never explained anything" to her, and was "no help at all" with her case.

On cross-examination, the petitioner insisted that she informed trial counsel that she was not taking her medication. She acknowledged, however, that she told the trial court at the guilty plea hearing that she was taking her medication and that she understood what was happening with the plea process. The petitioner denied that trial counsel told her on the day she entered her pleas that she could take more time to decide if she wanted to accept the plea offer. Instead, she claimed that she told trial counsel that she did not understand what was going on, but counsel told her that she needed to make a decision that day, that it was the "last time," and that she would either receive 125 years or twenty-five years at 100%.

Trial counsel testified that he had been practicing law for eight years, had represented hundreds of criminal defendants, and had participated in thirteen trials. Early in his representation of the petitioner, he obtained the services of an investigator, who assisted him in reviewing discovery, accompanied him on jail visits with the petitioner, and interviewed witnesses. The bulk of the discovery materials consisted of medical records, which trial counsel thought he may not have provided to the petitioner. He believed he had, though, given her copies of the police reports, witness statements, and related items.

Trial counsel specifically recalled having made four different visits to the petitioner while accompanied by his investigator. In addition, he believed he made one or two visits alone. He reviewed with the petitioner the discovery in the case, the State's evidence against her, the elements of the offenses, and her potential exposure if convicted at trial, which he said was fifteen to 150 years. Trial counsel recalled that his investigator interviewed the victim's father and his sister. He said he remembered the name Bianca German but could not recall if his investigator had interviewed her. However, he was certain that if the petitioner told him that Ms. German had knowledge that the victim's

father had committed the crimes, he would have interviewed her and any other witness with similar claims.

Trial counsel testified that the State's first offer was twenty years, but the petitioner rejected it and a trial date was set. The second offer of twenty-five years was made shortly before the trial date, and the petitioner accepted the offer on the same day that it was made. Trial counsel testified that he strongly urged the petitioner to accept the offer because he thought it was "as good as it was going to get, and the risk would be much higher if she went to trial." The petitioner was not happy with the offer and "struggled" with her decision. Trial counsel said he spoke with the prosecutor, who agreed to give them an extension of time, and then told the petitioner that "if she wanted some extra time that [he and his investigator] would go back out to the jail and discuss it with her so she didn't have to make the decision there on the spot." The petitioner, however, ultimately decided to plead guilty that day.

Trial counsel testified that, although there was no doubt that the petitioner suffered from a mental illness, she appeared to understand what she was doing in pleading guilty. He said a forensic mental evaluation was performed on the petitioner at Vanderbilt Medical Center, and she was found to be competent at the time of the offenses and competent to stand trial. He reviewed the report with the petitioner, and the petitioner's mental health was an issue that he and the petitioner discussed "at great length."

On cross-examination, trial counsel testified that his defense strategy would have depended on which version he chose of the "conflicting versions of events" that the petitioner provided to him. He said the defense strategy of blaming the victim's father would have been the strongest, but the petitioner did not make those allegations until the very end of the case, which left him without sufficient time to conduct a thorough investigation. He reiterated, however, that his investigator interviewed the victim's father and his sister. Trial counsel stated that the victim's father made no admissions in the case and had at least a partial alibi, having been with his sister at one point and having been incarcerated during another period in which the abuse was alleged to have occurred. Trial counsel testified that he was never provided with the name of any other witness alleged to have knowledge of the victim's father's having committed the abuse.

On December 18, 2015, the post-conviction court entered a detailed written order denying the petition for post-conviction relief. The court concluded that the petitioner failed to establish by clear and convincing evidence that she was denied the effective assistance of counsel or that her pleas were not knowing and voluntary. Thereafter, the petitioner filed a timely notice of appeal to this court, arguing that the post-conviction court erred in its findings.

# ANALYSIS

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

In denying the petition, the post-conviction court specifically accredited the testimony of trial counsel over that of the petitioner, finding, among other things, that trial counsel adequately investigated the case and meaningfully communicated with the petitioner, including about the charges, the punishment she faced, defense theories, and the plea bargain agreement. The post-conviction court found that the petitioner's mental competency affecting the voluntariness of her plea had been previously addressed in her motion to withdraw her pleas and thus was waived. The court also noted the petitioner's guilty plea testimony, in which she assured the trial judge that she understood the

-8-

proceedings, had discussed the case with her counsel, and was satisfied with counsel's representation, in concluding that the petitioner entered her pleas intelligently, knowingly, and voluntarily.

The record fully supports the findings and conclusions of the post-conviction court. Trial counsel's testimony established that he met with the petitioner on multiple occasions, reviewed discovery, arranged for the petitioner to undergo a mental evaluation, and investigated the case with the assistance of an investigator. Counsel's testimony further established that he held discussions with the petitioner about the State's evidence against her, various defense theories of the case, her mental health evaluation and mental health history, the range of punishments she faced, and the plea bargain agreement under which the petitioner ultimately entered her pleas. Trial counsel also testified that the petitioner provided multiple versions of the events and did not bring up the theory of the victim's father as the perpetrator until very late in the case. The petitioner also never informed counsel of any witnesses with knowledge of the victim's father's having committed the crimes.

As noted by the post-conviction court and pointed out by the State, the issue of the effect of the petitioner's mental illness on the voluntariness of her pleas has already been litigated in the motion to withdraw the guilty pleas, the denial of which was affirmed by this court on direct appeal. "'[U]nder the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal.'" State v. Willis, 496 S.W.3d 653, 743 (Tenn. 2016) (quoting Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd., 975 S.W.2d 303, 306 (Tenn. 1998)). Much of the testimony at the post-conviction hearing on the voluntariness of the pleas was a repetition of testimony that was already given at the hearing on the motion to withdraw the pleas. The petitioner responded appropriately to the trial court when asked at the guilty plea hearing whether she was taking her medication, understood the guilty plea agreement and the rights she was waiving by pleading guilty, was satisfied with counsel, and was entering her pleas knowingly and voluntarily. See Janette Ebony Robinson, 2015 WL 8973898, at *5. According to counsel, the petitioner struggled with the decision but ultimately chose to enter the pleas. Furthermore, she appeared to counsel to understand what she was doing in pleading guilty. In sum, the petitioner has not met her burden of demonstrating either that she received ineffective assistance of counsel or that her guilty pleas were unknowing and involuntary. Accordingly, we affirm the denial of the petition for post-conviction relief.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court denying the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE